UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:05 CR 163 CEJ |
| | ) | DDN |
| WENDY S. BREWSTER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on April 29, 2005.

**1. Pretrial disclosure of evidence**

Defendant Wendy S. Brewster has moved for production of guideline sentencing information (Doc. 17), and for production of evidence (Doc. 16). At the hearing held on April 29, defendant's counsel agreed that the United States had provided defendant with pretrial disclosure of all evidence to which she is entitled. Therefore, she agreed that these motions should be denied as moot.

**2. Motion to suppress evidence**

Defendant has moved to suppress statements (Doc. 15). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. Defendant Wendy S. Brewster is charged by indictment with embezzling approximately $31,547.00 from January 1, 2001 to February 20, 2004, from her employer First Bank. On February 20, 2004, she was called into a bank conference room for an interview by a First Bank

security officer.[1]  There she was confronted with evidence of her actions.  The security officer asked her questions and Brewster made oral statements.  The security officer told Brewster that she could not leave the conference room and Brewster believed she could not leave.  At no time during this interview did the bank security officer advise Brewster of her constitutional rights to remain silent and to counsel.  When the interview was over, the security officer notified the Shrewsbury, Missouri, police who came and took Brewster into custody.  Later that day, Brewster was released from police custody.

2.  In January 2005, Federal Bureau of Investigation Special Agent Charles S. Story, III, and another special agent began investigating Brewster, after receiving a report from the Shrewsbury police about embezzlement activities at First Bank.  The agents determined that she was employed at a department store in St. Louis County and they went to that store.  There, Agent Story identified himself and gave Brewster his business card.  He asked whether they could meet and talk about the bank matter.  They arranged to meet in a local St. Louis Bread Company restaurant on January 13, 2005, at 8:30 a.m.

3.  Agents Story and Robert Tripp arrived at the restaurant shortly before the appointed time.  They secured a table and Brewster arrived soon thereafter.  The agents introduced themselves and offered Brewster coffee or soda to drink.  Agent Story told Brewster that the interview was "voluntary" and that she could leave at any time.  He also told her that they were there to speak with her about what had happened at the bank.  He laid out a spreadsheet of transactions and showed her transaction tickets.  The agents asked her questions which she answered orally.  The interview lasted approximately one hour.  During the interview Brewster never asked for the interview to end, she never asked for the services of an attorney, the agents displayed no weapon, and the voices of all remained as though in casual conversation.  At the end of the interview Brewster was not arrested.  She left the restaurant of her

---

[1]The bank security officer was not an official police officer and Brewster knew this.

own accord. At no time during the interview did the agents advise Brewster of her constitutional rights to remain silent and to counsel.

**DISCUSSION**

Defendant Brewster argues that she was in custody when she was interrogated by the bank security officer, but was not then advised of her constitutional rights to remain silent and to counsel, as prescribed by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). She then argues that her statements to the bank security officer were provided to the Shrewsbury police who provided them to the federal agents. Her earlier statements, she further argues, provided the basis for the agents' interview in January 2005. Because she was not advised of her <u>Miranda</u> rights by the bank security officer, her statements to the security officer should be suppressed and her statements to the federal agents should be suppressed because they were tainted by the earlier violation of her rights. The court disagrees.

Defendant's statements to the bank security officer should not be suppressed. The Fourth Amendment's limitation on seizures applies to government action, not the action of a private party who is not acting as an agent of the government. <u>Walter v. United States</u>, 447 U.S. 649, 656 (1980); <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 487 (1971). The issue before the court is whether or not the bank security officer acted as an instrument or agent of the state when she told defendant that she could not leave the conference room and then interrogated her. <u>United States v. Jacobsen</u>, 466 U.S. 109, 113 (1984); <u>Coolidge</u>, 403 U.S. at 487.

The bank security officer will be considered to have acted as an agent of the state, if (1) the state authorities anticipatorily knew of and acquiesced in the security officer's actions in defendant's case and (2) the security officer intended to aid law enforcement or to further her own interests in doing so. <u>United States v. Malbrough</u>, 922 F.2d 458, 462 (8th Cir. 1990) (citing <u>United States v. Miller</u>, 688 F.2d 652, 657 (9th Cir. 1982)). No evidence indicated that any government official or officer, state or federal, knew or expected that the bank security officer would interrogate defendant as occurred. Therefore, even though she perhaps did so intending to aid state authorities, as

- 3 -

well as to further the bank's interests, her actions were not government action.

However, assuming the actions of the bank security officer were government actions and defendant's statements on February 20, 2004 to the bank security officer should be suppressed, defendant's constitutional rights were not violated by the interview with the federal agents on January 13, 2005.

Although there was no direct evidence of this, it is very likely that the federal agents had acquired reports of the defendant's statements to the bank security officer and also perhaps to the Shrewsbury police. Nevertheless, none of these February 2004 statements are a constitutional impediment to the January 2005 interview. This is because, as the evidence proved, the agents had other evidence of defendant's acts (transactional spreadsheets and transaction documents which were shown to defendant in the restaurant), which were very likely similar to the reasons why the bank investigated and interviewed defendant in the first place. The federal agents inevitably would have acquired,[2] and likely did acquire, evidence of defendant's acts other than her statements to the bank security officer. Even without her statements to the bank security officer, without doubt the agents would have still sought to interview defendant, as they did, and she would have likely voluntarily cooperated with them by giving them oral statements, as she did. This inevitable acquisition of her statements to the agents and the passage of almost a year attenuate any already gossamer link between the bank security officer's interview and the federal agents' interview. Nevertheless, the government has the burden of establishing the admissibility of a defendant's statements to the agents by a preponderance of the evidence. Colorado v. Connelly,

---

[2]Under the doctrines of the independent source exception and the inevitable discovery exception, evidence derived through illegal governmental investigatory actions (which the court does not find in this case) may still be admissible if it was discovered through a source independent of the illegality, Murray v. United States, 487 U.S. 533, 537 (1988), or if it would have been inevitably discovered through independent, lawful investigatory actions. Nix v. Williams, 467 U.S. 431, 446-67 (1984).

479 U.S. 157, 168-69 (1986). Generally, the admissibility of a defendant's statements which were made during police interrogation while the defendant was in custody depends upon whether the defendant had been advised of her rights, as prescribed by Miranda; whether the defendant knowingly and voluntarily waived the Miranda rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979); and whether the statements were voluntary.

The admissibility of statements, however, does not require that they be preceded by an advise of rights under Miranda, if the person who made the statements was not in custody when the statements were made. Miranda, 384 U.S. at 444. A person is "in custody"

> "when he has been formally arrested or his freedom of movement has been restrained to a degree associated with a formal arrest." United States v. Goudreau, 854 F.2d 1097, 1098 (8th Cir. 1988) (citing California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). In United States v. Griffin we enumerated six indicia of custody:
>
>> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official request to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; and (6) whether the suspect was placed under arrest at the termination of the questioning.
>
> Id., 922 F.2d at 1349. The presence of the first three indicia tends to mitigate the existence of custody at the time of questioning; the presence of the last three indicia aggravate the existence of custody. Id.

United States v. Brown, 990 F.2d 397, 399 (8th Cir. 1993).

Relevant to (2) is whether the suspect was handcuffed or otherwise physically restrained (e.g. by the physical blocking of the way out of the area of interrogation) during the interrogation. Relevant to (4) is whether a reasonable person would have believed that she was under

formal arrest or free to go about her business.  Relevant to (5) are the length and place of the interview.  <u>Brown</u>, 990 F.2d at 400; see also <u>Stansbury v. California</u>, 511 U.S. 318, 323-24 (1994).

In this case, all of the relevant factors indicate unequivocally that defendant was not in custody for <u>Miranda</u> purposes when she was interviewed by the federal agents.  At the beginning of the interview with the agents, she was told the interview was voluntary and that she was not under arrest.  There is no evidence that defendant was in any fashion restrained.  Defendant voluntarily acquiesced to the agents' request for an opportunity to interview her.  There was no evidence that any strong arm or other coercive tactic was used by the agents.  The atmosphere of the St. Louis Bread Company restaurant was not police dominated.  She was not arrested when the interview ended.  The length of the interview was short.  No reasonable person in defendant's shoes would have believed defendant was under arrest by the agents or unable to leave and go about her business.

Her statements to the agents were voluntary, because they were not the result of government overreaching, such as coercion, deception, or intimidation.  <u>Connelly</u>, 479 U.S. at 169-70.

Therefore,

**IT IS HEREBY ORDERED** that the motions of defendant for production of guideline sentencing information (Doc. 17), and for production of evidence (Doc. 16) are denied.

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence (Doc. 15) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation.  The failure to file objections may result in a waiver of the right to appeal issues of fact.

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 3, 2005.